ESTATE OF JULIA C. MORAGHAN, DECEASED.

[No. 21,239; April 5, 1899.]

**Administrator—Rivals for Appointment—The Daughter of the Intestee,** who has been granted special letters of administration, is in this case granted general letters, as against the public administrator and a son who, by reason of dissolute habits, is incompetent to act.

**Administrator—Person Incompetent to Act.—A** person who has dissolute, intemperate and improvident habits is not competent to act as administrator of his father's estate.

**Administrator—Person Incompetent to Nominate.—One** who, by reason of dissolute, intemperate and improvident habits, is incompetent to act as administrator of his father's estate, has no right to nominate his copetitioner, the public administrator, to act as administrator in his place, or to nominate him to act jointly with the public administrator.

, Henry N. Clement and Jabish Clement, for Elsie L. Moraghan.

James H. Creely, Daniel E. Mooney, for James B. Moraghan.

A. Ruef, for public administrator.

COFFEY, J. Julia A. Moraghan, a widow, possessing estate and residing and carrying on business in the city and county of San Francisco, state of California, died intestate at said city and county on the 2d day of February, 1899, leaving surviving her as her next of kin and only heirs at law, eight children, whose names and ages are set forth as follows: John O., 24 years; Elsie L., 22 years; James B., 21 years; Charles A., 18 years; Eugenie J., 16 years; Francis H., 14 years; Milton B., 10 years, and Eugene W., 7 years.

John O., though of lawful age, is incompetent to administer upon the estate, having been adjudged an insane person. James B., the only other son who is of lawful age, was absent from the state at the time of his mother's death. Elsie L., a daughter of lawful age, filed her petition on the 6th day of February, 1899, praying that special letters of adminis-

tration issue to her. Her application was assigned by the presiding judge to Department 9 for hearing, under calendar Number 21,239, and she was thereupon appointed special administratrix. She immediately qualified and special letters were issued to her.

Thereafter, on the 18th day of March, 1899, Elsie L. filed her petition with the clerk of the court praying for general letters. Her petition was filed by the clerk under the calendar Number 21,239, originally given the estate, and March 1, 1899, was fixed as the day for the hearing thereof in Department 9.

Prior thereto and on the 17th day of March, 1899, James B. Moraghan (who had returned to the state of California), filed his petition for letters of administration with the clerk of the court, through his attorneys, D. E. Mooney and J. H. Creely, who requested of the clerk that their petition be filed under a new calendar number and assigned to some other department of the court than Department 9. They were informed by the clerk that this could not be done unless they would obtain from the presiding judge an order assigning the hearing of their petition to some other department, after explaining to them that the estate was now pending in Department 9.

Said attorneys thereupon appeared before the presiding judge, and without calling his attention to the fact that the estate had already been assigned to Department 9, and that special letters had been issued therein to Elsie L. Moraghan, stated to him that on account of some ill feeling existing between their client and the judge presiding in Department 9, they requested that their petition be assigned for hearing to any other department than Department 9, and the presiding judge thereupon, without knowing that he had already assigned said estate to Department 9, assigned the same to Department 10.

Said attorneys thereupon took the assignment thus obtained to the clerk of the court, who filed the same and also the petition of the said James B. Moraghan, under a new and different calendar number, viz., No. 21,293, and fixed the

time for the hearing thereof for the 1st day of March, 1899, in Department 10.

Thereafter, on February 27, 1899, said attorneys moved the court in Department 9 that an order be made transferring the estate of decedent and all further proceedings therein to Department 10. The motion was opposed by counsel for Elsie L. Moraghan upon the ground that the counsel for James B. Moraghan had already obtained the order of assignment from the presiding judge in the manner above set forth, and that the proper place to make a motion for transfer was before the presiding judge. The motion was thereupon denied.

Thereafter, on February 28, 1899, said attorneys for James B. Moraghan, after notice to the attorneys for Elsie L. Moraghan, appeared before the presiding judge and moved for an order assigning the said estate to Department 10. The motion was opposed and the presiding judge, after the hearing, made an order vacating and setting aside his order of assignment made on the 17th day of February, 1899, and ordered that the petition of James B. Moraghan be heard before Department 9.

Thereafter, on March 1, 1899, the petition of Elsie L. Moraghan and James B. Moraghan both came on for hearing in Department 9. George B. Keane, an attorney representing John A. Drinkhouse, public administrator, announced to the court that James B. Moraghan desired to withdraw his petition for letters and nominate the said Drinkhouse in his stead, and D. E. Mooney, appearing as attorney for James B. Moraghan, thereupon moved to dismiss the petition of his client, and the same was thereupon dismissed. The said Keane then moved the court that the further hearing of the petition of Elsie L. Moraghan be postponed until the day fixed for the hearing of the petition of the said Drinkhouse. The court denied the motion upon the ground that the petition was not on file, and ordered the hearing on the petition of Elsie L. Moraghan to proceed, and the same was duly heard upon proofs being made of the facts set forth in her petition. After said hearing, however, and before an order of appointment had been made, A. Ruef, attorney for said

public administrator, appeared in open court with the petition of said Drinkhouse, which had just been filed with the clerk, in which said Drinkhouse, as public administrator, prayed that letters issue to him upon the written request of James B. Moraghan. The counsel then moved that all further proceedings be stayed until due and legal notice had been given of the time of hearing of the petition of the said Drinkhouse, which motion was granted and the further hearing of the petition of Elsie L. Moraghan was continued until the 14th day of March, 1899.

Thereafter, on the 14th day of March, 1899, both petitions came on for hearing, and A. Ruef moved in court to dismiss the petition of John A. Drinkhouse, public administrator, which motion was granted by the court, and the same was thereupon dismissed. He then announced to the court that a petition signed by the said James B. Moraghan and John A. Drinkhouse, praying that letters of administration be issued to them jointly, had been filed with the clerk on the day previously, viz., on March 13, 1899, and that the same had been set for hearing for March 28, 1899; and moved that the further hearing of the petition of Elsie L. Moraghan be continued until said date, which motion was granted by the court.

Thereafter, on the 28th day of March, 1899, both said petitions came on for hearing, Elsie L. Moraghan having filed her verified answer and opposition to the granting of letters to said James B. Moraghan and John A. Drinkhouse, alleging the facts hereinbefore set forth, and further alleging that the said James B. Moraghan was incompetent to act as administrator by reason of his dissolute habits, improvidence in the expenditure of money, and being addicted to the habit of drinking intoxicating liquors to such an extent as to render him disqualified from attending to business a great portion of the time; further alleging that his copetitioner, John A. Drinkhouse, was not in any way related to the decedent or entitled to succeed to any portion of the personal estate of the decedent, but that he applied solely in his official capacity as public administrator and upon the written request of his copetitioner, James B. Moraghan; further alleging that she

was the duly appointed, qualified, and acting guardian of the person and estate of her brother, the said John O. Moraghan, an insane person; and was also the duly appointed, qualified, and acting guardian of all her minor brothers and sisters, viz., of Charles A., Eugenie J., Francis H., Milton B., and Eugene W. Moraghan, the three eldest of whom being 14 years of age and over, had filed their written request for her appointment.

The court thereupon proceeded with the hearing of said petition and the answer and opposition filed by the said Elsie L. Moraghan, and from the testimony of witnesses introduced and sworn in open court, determined that the allegations in the answer and opposition of the said Elsie L. Moraghan were fully sustained by the evidence.

### CONCLUSIONS OF LAW.

Upon the foregoing facts, the court found the following conclusions of law:

First—That as between the petitioner, Elsie E. Moraghan, and the petitioners James B. Moraghan and John A. Drinkhouse, public administrator, the said Elsie L. Moraghan is entitled to administer upon the estate of decedent, Julia A. Moraghan.

Second—That the petition of the said James B. Moraghan and John A. Drinkhouse, public administrator, should be and is hereby denied and the petition of the said Elsie L. Moraghan should be and is hereby granted.

Third—That the petitioner, James B. Moraghan, is legally incompetent to act as the administrator of the estate of the decedent, Julia A. Moraghan, by reason of his dissolute and improvident habits, in the expenditure of money and his habit of drinking intoxicating liquors to such an extent that, by reason thereof, he is disqualified a great portion of the time from properly attending to business.

Fourth—That by reason of his said incompetency the said James B. Moraghan has no legal right to nominate his co-petitioner, John A. Drinkhouse, as public administrator or otherwise, to act as such administrator in his place and stead

or to nominate him to act jointly with said John A. Drink-house as coadministrator.

---

*As to Improvidence, Drunkenness* and want of understanding or integrity as disqualifying a person to act as administrator, see Estate of Piercy, 3 Cof. Prob. Dec. 473.

## NOMINATION OF ADMINISTRATOR.

The right of a surviving husband or wife to nominate an administrator of the estate of the deceased wife or husband is absolute under the terms of the statutes: Cotter's Estate, 54 Cal. 215 Matter of Stevenson, 72 Cal. 164, 13 Pac. 404; In re Dorris, 93 Cal. 611, 29 Pac. 244; Matter of Dow, 132 Cal. 309, 64 Pac. 402; In re Stewart, 18 Mont. 595, 46 Pac. 806; In re Watson, 31 Mont. 438, 78 Pac. 702; McLean v. Roller, 33 Wash. 166, 73 Pac. 1123. See, also, Matter of Muersing, 103 Cal. 585, 37 Pac. 520; Matter of Donovan, 104 Cal. 623, 38 Pac. 456; Matter of Shiels, 120 Cal. 347, 52 Pac. 808; In re Wakefield, 136 Cal. 110, 68 Pac. 499; Daggett's Estate, 15 Idaho, 504, 98 Pac. 849; State v. Woody, 20 Mont. 413, 51 Pac. 975.

In the case of other persons other than the husband or wife, the right of nomination is advisory only, and the petition of the person entitled to letters of administration praying for the appointment of another as administrator is addressed to the mere discretion of the probate judge, who may properly, if he sees fit, appoint someone other than the person nominated: In re Bedell, 97 Cal. 339, 32 Pac. 323; Matter of Healy, 122 Cal. 162, 54 Pac. 736; Daggett's Estate, 15 Idaho, 504, 98 Pac. 849; Sargent's Estate, 62 Wis. 130, 22 N. W. 131. See, also, In re Watson, 31 Mont. 438, 78 Pac. 702. And see Larson v. Stewart, 69 Wash. 223, Ann. Cas. 1914A, 1011, 124 Pac. 382, as to the right of creditors of the decedent to nominate the administrator. The petition of one of such relatives who is a nonresident of the state, and therefore is not himself entitled to letters of administration, is a legal nullity: In re Craigie, 24 Mont. 37, 60 Pac. 495. In the case of In re Bedell, 97 Cal. 339, 32 Pac. 323, the difference between sections 1365 of the California Code of Civil Procedure, giving to the surviving husband or wife the right to nominate some competent person as administrator, and section 1379, providing that "administration may be granted to one or more competent persons, although not otherwise entitled to the same, at the written request of the person entitled, filed in the court," was pointed out. It was said not to be essential to an appointment by a surviving husband or wife, that the husband or wife should be competent, himself or herself, to act as administrator, while under section 1379 only one competent to act as administrator was entitled to nominate a person to act in his stead. To the same effect, see In re Robie, Myr. Prob. 226 (as to section 1365); Cotter's

Estate, 54 Cal. 215 (as to section 1379); Beech's Estate, 63 Cal. 458, and Matter of Stevenson, 72 Cal. 164, 13 Pac. 404. And In McLean v. Roller, 33 Wash. 166, 73 Pac. 1123, a surviving husband was held to be entitled, under the Washington statute (Bal. Code, sec. 6141), to nominate the administrator of his wife's estate, although he himself was incompetent to act as such because of his conviction of felony. Furthermore, in Morgan's Estate, 53 Cal. 243, and in Matter of Richardson, 120 Cal. 344, 52 Pac. 832, it was held that the provision of section 1379 did not require the court to appoint the nominee of the person entitled, as in the case of a surviving husband or wife, but merely placed the appointment in the discretion of the court.

The court has no discretion to appoint the nominee of one or more of a class, each of whom is equally entitled to letters, as against one of the same class who asks for the grant of letters to himself: In re Myers, 9 Cal. App. 694, 100 Pac. 712.

In Matter of Dow, 132 Cal. 309, 64 Pac. 402, the right of a surviving wife to administer on the estate of her deceased husband was held not to be affected by the circumstance that since the death of her husband she had remarried, and it was therefore held that if she declined the administration, she was entitled to nominate the person to be appointed administrator. But compare Matter of Allen, 78 Cal. 581, 20 Pac. 426.

While the executor named in a will proved in another jurisdiction is not entitled to nominate the administrator cum testamento annexo on the admission of the will to probate, the appointment of the person named by him is not error of which the public administrator can complain: Matter of Harrison, 135 Cal. 7, 66 Pac. 846.

One entitled to administer, who has signed a written request for the appointment of another, and has encouraged such other person to go to the expense and trouble of applying for the office, is estopped, it has been held, from withdrawing his renunciation: Kirtlan's Estate, 16 Cal. 161; Silvar's Estate, 5 Cal. Unrep. 494, 46 Pac. 296. And in the case of In re Bedell, 97 Cal. 339, 32 Pac. 323, it was held that a request in due form for the appointment of a particular person, under section 1379 of the California Code of Civil Procedure, vested in the court a discretion to appoint such person, and was not rendered ineffective by a subsequent request signed by the same person for the appointment of the public administrator. But in Matter of Shiels, 120 Cal. 347, 52 Pac. 808, it was held that the fact that the widow of a decedent had requested the appointment of a certain person as administrator in her stead did not estop her from revoking her request, and that whether there were attendant circumstances which would authorize the court to give greater weight to her request than to her withdrawal of it was a matter for the determination of the court of first instance.

While the California statute authorizes the issuance of letters testamentary to a nonresident executor, it does not entitle him to letters of administration, and hence section 1379 of the Code of Civil Procedure, which provides that letters of administration may be granted to one or more competent persons, although not otherwise entitled to the same, at the written request of the person entitled, does not authorize the appointment of such a person at the request of a nonresident executor: Matter of Brundage, 141 Cal. 538, 75 Pac. 175.

In the case of In re Woods, 97 Cal. 428, 32 Pac. 516, it was held that while the California statutes (sections 1365, 1368, 1369, and 1379) were somewhat confusing as to the point whether a minor was a "person entitled," and therefore as to whether the guardian of a minor might be granted letters of administration, yet that assuming that the guardian of a deceased minor had some right to letters, still he had such right merely as the representative or in place of the minor, and did not come within any one of the classes of persons enumerated in section 1365 as persons to whom administration must be granted, and that therefore such guardian's written request could not confer on the person named the right to administer.

By the terms of section 1383–1385 of the California Code of Civil Procedure, if letters of administration have been granted to any other person than the surviving husband or wife, child, father, mother, brother or sister of the intestate, a surviving husband or wife is entitled to have letters issued to any competent person whom he or she may select; but if letters are granted to a surviving brother of the intestate, a surviving wife's rights are governed by section 1386. Her only right thereunder is to have letters issued to herself, and she is not entitled to have letters issued to some other competent person: Matter of Shiels, 120 Cal. 347, 52 Pac. 808. And so under section 5366 of the Idaho Revised Statutes, where any person not a member of one of the first five classes enumerated in section 5351 has been appointed administrator, the appointment may be revoked on the petition of any member of such five classes who is himself competent to administer, or on the application of his or her nominee, and thereupon letters shall be granted to some of the members of such five classes petitioning therefor, or to some competent person designated by a member of one of these classes: Daggett's Estate, 15 Idaho, 504, 98 Pac. 849. But section 66 of the California act to regulate the settlement of estates of deceased persons has been held to refer only to cases where there was a vacancy in the administration, and the wife, child, father, mother or brother of the intestate was held to be authorized to have letters granted to another revoked only on presenting a petition praying for the appointment of himself or herself as administrator: Carr's Estate, 25 Cal. 585.